# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LINDA LEE WALTERMEYER, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 10-1652 |
| ) | |
| v. ) | Magistrate Judge Bissoon |
| ) | |
| MICHAEL J. ASTRUE, Commissioner ) | |
| of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

### I. MEMORANDUM

For the reasons that follow, Defendant's Motion for Summary Judgment (Doc. 11) will be granted, and Plaintiff's Motion for Summary Judgment (Doc. 9) will be denied.

Plaintiff Linda Lee Waltermeyer ("Claimant" or "Ms. Waltermeyer") has filed this social security appeal, challenging the ALJ's decision dated December 16, 2009. *See generally* Compl. (Doc. 2); ALJ's Decision, R. at 12-21. Claimant seeks disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") benefits under Title II and XVI of the Social Security Act ("Act"), alleging disability as of September 1, 2002, due to malignant fibrosis hysteocytosis grade II in remission, diabetes, panic attacks, depression, anxiety and left knee problems. (R. at 185). Ms. Waltermeyer's claims were initially denied on October 3, 2008, and she filed a timely request for hearing. (R. at 76-85; 88-89). On November 4, 2009, a hearing was held before Administrative Law Judge ("ALJ") George A. Mills, III in Morgantown, West Virginia, where Ms. Waltermeyer and James Ganoe, a vocational expert, appeared and testified. In a decision dated December 16, 2009, the ALJ determined that Ms. Waltermeyer was not

"disabled" within the meaning of the Act. R. at 20. Subsequently, the Appeals Council declined to review the ALJ's decision, and Ms. Waltermeyer filed this action seeking review of the ALJ's decision pursuant to 42 U.S.C. § 405(g). (Doc. 2).

In evaluating disability claims under the Act, the Commissioner applied a five-step sequential analysis. Proceeding through all five steps, the ALJ concluded the Ms. Waltermeyer was not capable of performing her past relevant work. The ALJ also found that Claimant suffered from several severe impairments: status post surgery for malignant fibrous histiocytoma, grade III, in the left arm; non-insulin dependent diabetes mellitus with polyneuropathy; status post arthroscopic surgery to the left knee; hypothyroidism; obesity; major depressive disorder, panic disorder without agoraphobia, and post-traumatic stress disorder. Nevertheless, the ALJ found that these conditions did not preclude Claimant from performing a limited range of unskilled light work with only occasional climbing of ramps and steps, with low stress and no rapid production, piece rate or quota, which involved working with things primarily rather than people, and only occasional contract with supervisors and co-workers. *See* ALJ's Decision, R. at 15. The vocational expert testified that an individual with Claimant's limitations could perform jobs existing in significant numbers in the national economy, and the ALJ found Claimant not disabled at step five of the sequential analysis. *Id.*

On appeal, Claimant argues that the ALJ failed to afford proper weight to the opinions of certain medical sources, and thereby failed to accurately portray her limitations in the hypothetical question posed to the vocational expert. In addition, Claimant asserts that the ALJ erred in failing to give sufficient weight to her subjective complaints of pain. Having reviewed the entire record, the undersigned concludes that the ALJ's decision was supported by substantial

2

evidence. Thus, the Court will limit its discussion to the points of alleged error identified by Claimant.

Claimant challenges the ALJ's rejection of consultative examiner Dr. Rasheed's opinion that Claimant is unable to perform the demands of sedentary work on a sustained basis. Dr. Rasheed's examination, conducted on September 3, 2008, revealed that, except for trace edema to her left leg and arm, Claimant had no extremity edema, cyanosis, or clubbing. While Claimant had diminished extremity range of motion and diminished muscle strength on the left arm, she had full extremity range and full muscle strength on the right. This limitation was factored into the ALJ's analysis and finding that Claimant could perform a range of light work that required no repetitive reaching with the left upper extremity and that provided appropriate postural and manipulative limitations. Furthermore, Claimant fails to identify any concrete medical evidence in Dr. Rasheed's report that was omitted from the ALJ's analysis.

Although Claimant states that the ALJ "[relied] essentially on his own analysis of the medical evidence," the opinion of the state agency medical consultant, Dr. Bryan, supported the ALJ's findings. Dr. Bryan opined that Dr. Rasheed's determinations "[were] not consistent with all of the medical and non-medical evidence in the claims folder" and that "the physician's opinion in [the] report [was] less persuasive." The ALJ's finding that Dr. Rasheed's conclusions were an "overestimate of the claimant's restrictions by the one-time examiner" is supported by Dr. Bryan's report. Dr. Bryan opined that Dr. Rasheed's opinion "contrast[ed] sharply with other evidence on record," that "the residual functional capacity assessment [was] different from the opinions expressed by [Dr. Rasheed]," and he concluded that "some of the opinions cited in the report . . . [reflected] an overestimate of the severity of the claimant's functional restrictions."

The ALJ acted within his discretion in affording greater weight to the opinions of Dr. Bryan than Dr. Rasheed. *Brown v. Astrue*, -- F.3d --, 2011 WL 2624439 *3 (3d Cir. Jul. 6, 2011) (ALJ is not bound to accept opinion or theory of any medical expert, but may weigh medical evidence and draw his own inferences).

Likewise, the ALJ relied on the opinions of Dr. Milke, the state agency psychologist, in finding that Claimant did not have a disabling mental impairment. Dr. Milke found that Claimant's limitations would not preclude performance of routine work tasks, that she was capable of working within a work schedule and at a consistent pace, she could carry out short and simple instructions, and make simple decisions. R. at 317-18. Therefore, he concluded that Claimant could perform the basic mental demands of work on a sustained basis. In relying on Dr. Milke's opinions, the ALJ explained why he afforded less weight to the Global Assessment of Functioning ("GAF") scores of 45 and 42, assigned by Dr. Mukherjee and Ms. Kirk, respectively. As the ALJ observed, Claimant completed a four-year college degree in 2007 and performed a work-study job from 2003-2006. R. at 18, 35-36. Furthermore, the ALJ cited Claimant's complete lack of inpatient or outpatient mental health treatment until April 2008, when she commenced outpatient treatment with Dr. Pritts. R. at 269-95. Finally, the ALJ found inconsistencies in Ms. Kirk's reports, which provided no rationale for the drop in the Claimant's GAF scores in the span of six months, from 61 (denoting mild symptoms or limitation) in April 2009, to 42 (indicating serious symptoms and limitation) in September 2009. At the September 2009 evaluation, Ms. Kirk found that Claimant was pleasant and cooperative, denied suicidal and homicidal ideations, had normal though processes, appropriate affect, good judgment and insight, good memory, good attention, good impulse control, and normal motor behavior.

4

R. 519-26. The ALJ acted within his discretion in concluding that the above findings were inconsistent with the assigned GAF scores.

In regards to Claimant's argument that the ALJ failed to attach sufficient weight to the consultative psychiatrist's opinion, the record indicates that the ALJ did give Dr. DeTore's findings consideration. On April 22, 2008, Dr. DeTore diagnosed the Claimant with moderate major depressive disorder, panic disorder with agoraphobia, and moderate post traumatic stress disorder. In his opinion, the ALJ recognized these limitations as "severe impairments." On May 2, 2008, Dr. DeTore stated that Claimant had no limitations in understanding, remembering and carrying out short and detailed instructions. He found Claimant to be moderately limited in performing "activities of daily living," a finding accepted by the ALJ in his evaluation of the "B" criteria under Section 12.04 of Appendix 1. Furthermore, Dr. DeTore found that Claimant had marked limitations of social functioning. Rejecting this particular assessment, the ALJ concurred with the opinion of the Claimant's treating social worker, who opined that the Claimant's limitation was moderate, rather than marked. In explanation, the ALJ cited to evidence in the longitudinal record, specifically to Dr. Mukherjee's June 12, 2008 report, in which he described Claimant as making good eye contact, behaving pleasantly and cooperatively. Again, the ALJ's determination regarding Claimant's mental conditions were supported by substantial evidence.

Finally, the ALJ did not err regarding Claimant's subjective complaints of pain. After carefully considering all of Claimant's testimony, the ALJ concluded that Claimant's "statements concerning the intensity, duration and limiting effects of [her] symptoms [were] not entirely credible." R. at 16. In assessing credibility, the ALJ may look to medical source opinions, objective medical evidence, and evidence of the claimant's daily activities. *See* 20 C.F.R.

5

§ 416.929(c)(1), 416.929(c)(2), SSR 96-7p. As noted previously, both Dr. Bryan and Dr. Milke found Claimant's statements to be partially credible. R. at 313-17. Physical examinations of Claimant revealed normal neurological findings and essentially normal physical findings, aside from the reduced range of motion and strength in Claimant's left arm. R. at 296-97, 333-42, 471-74. Claimant reported slight pain but overall improvement of symptoms after her ACL reconstruction. R. 251-59. Other physical examinations revealed that Claimant had normal gait, station and posture. The above medical evidence offers substantial support for the ALJ's classification of Claimant's limitations as "moderate" and is inconsistent with Claimant's description of the severity of her symptoms and limitations. Furthermore, the ALJ considered Claimant's daily activities, which included the care of her children and father, attendance of medical appointments, reading, craft work, college attendance, and performance of a work study job. R. at 18, 32-33, 66. Considering the evidence presented, the ALJ acted within his discretion in finding that, while Claimant experienced some limitations, her complaints of debilitating pain were not entirely credible. R. at 16-18.[1]

For all the reasons stated above, the ALJ's findings regarding Claimant's residual functional capacity were supported by substantial evidence. It follows that the ALJ did not err by incorporating those findings into the questions posed to the vocational expert. Consistent with the foregoing, the Court enters the following:

---

[1] Although the Court is inclined to agree that the ALJ's comments regarding Claimant's motivation for "secondary gain" are unsupported, *see* Plaintiff's Br. (Doc. 10) at 13-14, this is immaterial for the purposes of affirming the ALJ's decision. The ALJ's determinations independently are supported by substantial evidence, and the Court places no reliance on the ALJ's passing reference to secondary gain.

## II. ORDER

Plaintiff's Motion for Summary Judgment **(Doc. 9)** is **DENIED**, and Defendant's Motion for Summary Judgment **(Doc. 11)** is **GRANTED**.

IT IS SO ORDERED.


August 9, 2011										s/Cathy Bissoon
											Cathy Bissoon
											United States Magistrate Judge

cc (via ECF email notification):

All Counsel of Record